# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

OSCAR PEREZ-GARCIA,

    Petitioner,

v.                                                                                                       Case No. 09-10839

MARY BERGHUIS,

    Respondent.
                                               /

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Oscar Perez-Garcia has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's convictions in Michigan for first-degree premeditated murder, kidnapping, first-degree home invasion, arson, and possessing a firearm during the commission of a felony (felony firearm). Respondent Mary Berghuis, Warden of the Earnest C. Brooks Correctional Facility, where Petitioner is currently incarcerated, urges the court to deny the petition. The court agrees that Petitioner is not entitled to habeas relief, and the petition will be denied.

## I. BACKGROUND

Petitioner's convictions arose from the March 7, 2005 murder of Julio Perez in Detroit, Michigan. Police arrested Petitioner at his home at approximately 9:30 p.m. on March 9, 2005. Petitioner claims to have requested counsel when the arresting officers initially came to his house. Later that evening, Petitioner was brought to the police station at 1300 Beaubien St. in downtown Detroit, where Petitioner claims to have

spoken to two different police officers in order to request counsel. Finally, in the early hours of the next morning, Petitioner was interrogated by Officer Derryck Thomas, who had just begun the "graveyard shift." Petitioner claims that he again asserted his right to counsel when speaking with Thomas. Nevertheless, Petitioner also agreed to sign a waiver consistent with *Miranda v. Arizona*, 384 U.S. 436 (1966), and dictated a lengthy, highly detailed murder confession.

In his confession, Petitioner explained that he arrived at the victim's house with two men, who claimed to be police officers. The three men intended to rob the victim of drugs and money but found that there was little or none of either. Petitioner then called Martinez, whom Petitioners alleges directed the robbery. Martinez ordered Petitioner to take the victim out of his house, and suggested that Petitioner and his family would be in danger if the victim were not murdered. Petitioner had the victim removed from his home, and made the victim accompany him in a white two-door car that belonged to his friend, Leticia Villareal. Petitioner drove the victim to an isolated railroad yard near Central Avenue. At that point, the victim fought against Petitioner and attempted to gain control over Petitioner's gun. There was a violent struggle in the car in which Petitioner wounded himself in the thigh with a bullet. During the struggle, Petitioner shot the victim twice in the head. Petitioner then poured gasoline inside the car and burned the evidence of the crime. Petitioner then made his escape towards Central Avenue, where he was subsequently picked up by his brother. Petitioner returned to his brother's house, where Villareal later met him. Petitioner initially told Villareal to report her car as stolen, and eventually gave her a brief account of the evening's events. While at Petitioner's brother's house, Villareal overheard Petitioner say that someone had been

killed in her car, that Petitioner poured gas on "a guy," and that her car was "burnt up." (Tr., Vol. I, 167:1-17.) Villareal first reported her car as stolen, but she later produced a written statement attesting to what she had been told and had overheard.

At trial Petitioner repudiated his confession, stating that Thomas composed the statement and forced Petitioner to sign it. Petitioner claimed that he entered the victim's home with implicit permission, that the victim willingly accompanied him in the car, and that the murder and arson were committed by Martinez.

Petitioner was convicted on all charges in the Wayne County Circuit Court. The Michigan Court of Appeals reviewed Petitioner's application for delayed leave to appeal and rejected it for lack of merit in the grounds presented. The Supreme Court of Michigan, unpersuaded that the questions presented should be reviewed, denied a leave to appeal the order of the Court of Appeals. *People of the State of Michigan v. Perez-Garcia*, 741 N.W.2d 514, 514 (Mich. 2007). Petitioner then filed this petition for habeas corpus, claiming that the Michigan trial court erred in its failure to suppress his murder confession, which was allegedly taken in violation of his Fifth Amendment right to counsel.

## II. STANDARD OF REVIEW

Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits:

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphases in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.' *Id.* at 409. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam opinion) (emphasis in original). Furthermore, "§ 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).

### III. DISCUSSION

Petitioner alleges that the Michigan trial court should have suppressed the confession he gave Thomas because before he confessed Petitioner had requested but was denied counsel in violation of his Fifth Amendment rights.

In *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981), *reh'g denied*, 452 U.S. 973 (1981), the Court explained,

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. [A person accused of a crime], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards*, 451 U.S. at 484-85.

Petitioner claims he requested counsel, but was denied by the following officers: the police officers who arrested him at his house, two police officers at the 1300 Beaubien station where he was held in custody, and Thomas. At a *Walker* hearing[1], the Michigan trial court found that Petitioner's murder confession was voluntary, and admitted it into evidence. However, the trial court did not explicitly state its decision on the issue of whether Petitioner in fact requested an attorney from any of the police officers prior to signing a *Miranda* waiver and giving his confession. Petitioner argues that admitting his confession, obtained in violation of *Edwards*, unfairly prejudiced the jury's verdict. (Pet. Mem. 23.) Respondent contends both that Petitioner never

---

[1] In Michigan courts, a *"Walker* hearing" is used to determine the voluntariness of a confession. *See generally People v. Walker*, 132 N.W.2d 87 (Mich. 1965).

5

requested an attorney and that any error in admitting the confession would have been harmless. (Resp. Mem. 22.)

### A. Admissibility of the Confession

Under *Miranda*, Petitioner had a right to counsel during custodial interrogation. 384 U.S. 436 (1966). Had Petitioner unambiguously stated his refusal to make a statement in the absence of an attorney, the police would have been required to cease all communication on the matter until he had obtained legal counsel. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The officers could not then have continued or resumed questioning Petitioner unless Petitioner initiated further communication. *Id.* The admissibility of the confession thus turns on a determination of fact: whether Petitioner had requested an attorney prior to the questioning that produced the confession.

In reviewing a state court finding in a habeas action, "a determination of a factual issue made by a State court shall be presumed to be correct" unless shown otherwise by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption applies equally to implicit and explicit findings of fact. *Carey v. Myers*, 74 F.App'x 445, 448 (6th Cir. 2003) (citing *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996)). At the *Walker* hearing, the state court heard evidence from Petitioner and Respondent on the circumstances surrounding the confession. The trial court had before it much more than the lifeless paper record now before this court. Moreover, that court had ample opportunity and "ability to adjudge the witnesses' demeanor and credibility." *Id.* The trial court heard testimony about not only Thomas's interrogation and the confession, but also about Petitioner's alleged earlier requests for counsel. In ruling the confession

admissible, the trial court expressly considered Petitioner's testimony of alleged coercive actions. The trial court also considered the form, length, tone, and exculpatory content of the twelve-page confession. Although these *Walker* hearing findings fall within a grey area between explicit and implicit findings of fact, the trial court found Petitioner had been afforded his constitutional rights. After hearing the evidence, it was persuaded that Petitioner had been informed of his *Miranda* rights prior to the interrogation, that he had not requested counsel, and that none of the alleged coercive acts occurred or caused Petitioner to make an involuntary statement. Therefore, Petitioner now bears the burden of showing by clear and convincing evidence that the trial court's determination of these matters was erroneous.

Petitioner seeks to meet this high burden by arguing Respondent failed to produce any direct evidence to contradict Petitioner's assertions that he had requested counsel several times prior to giving the confession. Inasmuch as Respondent did not introduce testimony at trial from every officer who came into contact with Petitioner between the time he was arrested and the time he was interrogated by Thomas, Petitioner is correct. However, Respondent was required to prove merely by a preponderance of evidence that Petitioner's confession was voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). At the *Walker* hearing, Respondent did produced a written waiver of *Miranda* rights signed by Petitioner, as well as the testimony of Thomas. These directly contradicted Petitioner's testimony that he had requested counsel but was not informed of his *Miranda* rights.

Since the trial court made express factual determinations regarding the immediate circumstances of the confession, Petitioner's argument reduces to a claim

7

that there was no basis in the evidence presented before the trial court from which to find that Petitioner had not requested counsel. Respondent presented evidence sufficient to allow the trial court to find Petitioner's testimony unreliable or disingenuous. The trial court likewise found Petitioner's own testimony undermined his assertions. Respondent was not required to prove that no request for counsel had been made unless doing so would be necessary to prove, by a preponderance of the evidence, that the confession was admissible. *See Connelly*, 479 U.S. at 168. The trial court's *Walker* hearing findings that Petitioner had not requested an attorney prior to signing a *Miranda* waiver and offering a confession are factual determinations. These determinations are supported sufficiently—although not to the point of perfection—by the statement itself, the signed waiver, and the testimony of Petitioner and Thomas. Petitioner has not presented clear and convincing evidence, but has merely reiterated the same assertions offered during the hearing. This court will therefore give proper deference to the determinations of the state court and reject this petition.

### B. Harmless Error

Even if the state court had erred in admitting the confession at trial, such error would nonetheless have been harmless. "Harmless error analysis applies to coerced confessions." *Coomer v. Yukins*, 533 F.3d 477, 488 n.4 (6th Cir. 2008) (citing *Arizona v. Fulminante*, 499 U.S. 279, 295 (1991)), *cert. denied*, 129 S. Ct. 1349 (2009). It also applies to confessions admitted in violation of a defendant's Fifth Amendment rights. *Fleming v. Metrish*, 556 F.3d 520, 555 (6th Cir. 2009) (Clay, J., concurring in part) (citing *Fulminante*, 499 U.S. at 310-11). A constitutional error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v.*

*Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). "[T]he proper standard by which to gauge the injurious impact of the admission of constitutionally infirm evidence is to consider the evidence before the jury absent the constitutionally infirm evidence*.*" *Brumley v. Wingard*, 269 F.3d 629, 646 (6th Cir. 2001) (citing *Gilliam v. Mitchell*, 179 F.3d 990, 995 (6th Cir. 1999)). If the judge is certain that the error had no or only a small effect, the verdict must stand. *O'Neal v. McAninch*, 513 U.S. 432, 437-38 (1995) (citations omitted). However, if the matter is so evenly balanced that the judge has "grave doubts" as to whether the trial error had a substantial or injurious effect on the jury's verdict, such that the matter is so evenly balanced that he feels himself in a "virtual equipoise" as to harmlessness, the judge must treat the error as if it were harmful and grant the petitioner's writ. *Jensen v. Romanowski*, 590 F.3d 373, 378-79 (6th Cir. 2009) (citing *O'Neal*, 513 U.S. at 435 & 445; *Stallings v. Bobby*, 464 F.3d 576, 582 (6th Cir. 2006)). Here, the court finds that any error that may have resulted from admitting Petitioner's confession was harmless.

The Sixth Circuit has held that when "the majority of the information conveyed in [erroneously admitted evidence] was already before the jury through other admissible forms of evidence," the error in admitting the contested evidence is harmless. *Hill v. Brigano*, 199 F.3d 833, 847 (6th Cir. 1999). In this case, nearly all of the material parts of Petitioner's confession were conveyed in the testimony of Joel Perez, Leticia Villareal, and Daniel Brooks, each of whom testified in court before Petitioner's confession was read at trial.

In his confession, Petitioner recalled how the crime began. "I came to the [victim's] house with two black guys, they were in their own car. . . . We went inside to

rob the place for dope and money." (Tr., Vol. II, 66:18-22.) In the same vein, Perez testified that Petitioner came in to the victim's home with two men, and Villareal testified that Petitioner claimed he was trying to retrieve money owed to him. (Tr., Vol. I, 175:7-12; Tr., Vol. II, 34:22-24.)

Petitioner recounted how he kidnaped the victim. "While we were in the house the two black guys were yelling at [the other people in the house] that they were two police officers. The people down in the basement believed them." (Tr., Vol. II, 67:25-68:2.) Although he was not in the basement, Perez recounts the same details. (Tr., Vol. II, 34:15-24; Tr., Vol. II, 36:15-21.)

Petitioner said, "I told [the victim] to get in my car and the two black guys left." (Tr., Vol. II, 67:23-24.) Perez also accounts for Petitioner ordering the victim into his car and then driving off with him. (Tr., Vol. II, 36:22-38:1.)

Petitioner explained the altercation in the car and how he killed the victim. "So now we were in the car I had. Me and [the victim.]" (Tr., Vol. II, 68:3-4.) "The guy tried to jump on me. He was trying to take me over because he felt threatened so I showed him the gun that Martinez game me." (Tr., Vol. II, 68:14-17.) "He tried to reach for the gun and take it out of my hand. . . . [I]t went off and shot me in my left thigh." (Tr., Vol. II, 68:19-24.) Villareal's testimony (Tr., Vol. I, 168:23-169:11) tracked Petitioner's retelling of the struggle in the car and the self-inflicted thigh wound were recounted. Petitioner: "Now [the victim] panicked. He tried to pull the gun away. It was still in my hand. The gun flew up toward his head, I had my finger on the trigger and it went off. I shot it twice. I knew it shot twice at his head." (Tr., Vol. II, 68:25-69:3). Villareal

10

testified that she overheard Petitioner discussing that someone was killed in her car. (Tr., Vol. I, 163:24).

Petitioner admitted the way in which he burned the evidence at the crime scene. "I saw the plastic red gas can in the back seat . . . .  I sprinkled gas around the inside of the car.  I had a lighter and I used a receipt and lit it.  Then the car started burning. . . . [T]hen I tried to walk away as fast as I could . . . down Central [Avenue]." (Tr., Vol. II, 69:21-70:8.)  Villareal similarly testified that she overheard Petitioner say he poured gas on a guy and that the car was "burnt up." (Tr., Vol. I, 167:1-3.)  Brooks testified that he saw a man standing next to the driver's side of a white burning car, who then walked away near Central Avenue. (Tr., Vol. I, 135:2-139:20.)

Near the end of his confession, Petitioner recounted the concluding events in the incident, finishing with his explanation of the events to Villareal.  "I called the girl who owns the car and told her that someone had stole [sic] the car.  I asked her to come to my brother's house. . . . I told her exactly what happened." (Tr., Vol. II, 71:22-25.) Villareal also said that she was picked up and taken to Petitioner's brother's house, where Petitioner explained that her car was not stolen, but intentionally destroyed. (Tr., Vol. I, 160:12-20; Tr., Vol. I, 175:5-10.)

Considering the evidence before the jury, and ignoring the confession, the key components of the confession were introduced at trial.  Perez testified to the events occurring at the victim's house.  Physical evidence taken from the car is sufficient to indicate a struggle for the gun, during which Petitioner was wounded.  Brooks testified, albeit with less specificity, that he saw one man leave the area of the burning car and walk toward Central Avenue.  A burned body, later confirmed by DNA analysis to be the

11

victim, was found in a white car similar to the one Perez described in his testimony. Finally, the testimony of Villareal, a friend of Petitioner and the owner of the car, ties all of the other evidence together as clearly as does the challenged confession. Upon this set of facts, there is no ground for finding that the confession—even if improperly admitted—had a "substantial and injurious effect or influence" on the jury. *Brecht*, 507 U.S. at 623. Any evidence admitted against a defendant is likely to be injurious, but it is harmless error unless the effect is also substantial. *Id.* Under *Brumley* and *Hill*, admission of the confession was at worst harmless error because other evidence placed nearly all the information properly before the jury. 269 F.3d at 646; 199 F.3d at 847.

Admission of constitutionally infirm evidence cannot be harmless error where it is "the key piece of evidence" against the accused. *See Stoner v. Sowders*, 997 F.2d 209, 214 (6th Cir. 1993). Petitioner's confession may be strong evidence, but it is not of such disproportionate weight to other evidence that its admission would have been essential to the jury's determination of the facts. The prosecution used many evidentiary sources to build its case against Petitioner. In the approximately twelve-page transcript of the prosecutor's opening statement describing the evidence against Petitioner, only slightly more than one and one-half pages involved the confession. *See Gray v. Wolfenbarger*, 2010 WL 1131494 at * 7 (E.D. Mich. Feb. 1, 2010) (finding harmless error where only one of twenty pages involved the inadmissible evidence and independent evidence supported the findings of fact). A reasonable jury could have readily concluded from the witness testimony and circumstantial evidence that Petitioner kidnaped and murdered

12

the victim with a gun, then set the physical evidence ablaze. Any possible error in admitting the confession was harmless.

## IV. CONCLUSION

Petitioner claims that the Michigan trial court erred in admitting his custodial statement. This court finds Petitioner has failed to prove his claims by clear and convincing evidence. Additionally, the claimed error amounts to no more than harmless error, which is not grounds for habeas relief. Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

      s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 30, 2010, by electronic and/or ordinary mail.

      s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522